LAW OFFICES OF SCOTT J. GOLDSTEIN, LLC
280 West Main Street
Denville, NJ 07834
Tel: (973)453-2838
Fax: (973)453-2869
By: Scott J. Goldstein (016472004)
*Attorney for Debtor*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re:<br><br>    JAMES WALTER LUCAS and<br>    BARBARA JEAN LUCAS,<br><br>              Debtors. | Case No. 16-32586<br><br>Chapter 11<br><br>Hon. Vincent F. Papalia |

## DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C. §1125
## DESCRIBING REORGANIZATION CHAPTER 11 PLAN PROPOSED BY DEBTOR

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THIS PLAN OF REORGANIZATION. THE PLAN PROPONENT BELIEVES THAT THIS PLAN OF REORGANIZATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE. THE PROPONENT URGES THAT THE VOTER ACCEPT THE PLAN.**

Dated: 7/8/2018                    Proponent    <u>James Walter Lucas</u>


                                 <u>Barbara Jean Lucas</u>

                                 **LAW OFFICES OF**
                                 **SCOTT J. GOLDSTEIN, LLC**
                                 *Attorneys for Debtors in Possession*


                                 By:<u>   /s/Scott J. Goldstein</u>

# TABLE OF CONTENTS

# Contents

I.    INTRODUCTION.................................................................................................................4

   A.    Purpose of This Document.........................................................................................5

   B.    Confirmation Procedures ...........................................................................................6

      1.    Persons Potentially Eligible to Vote on the Plan........................................6

      2.    Time and Place of the Confirmation Hearing...........................................7

      3.    Deadline For Voting For or Against the Plan .............................................7

      4.    Deadline For Objecting to the Confirmation of the Plan ...........................8

      5.    Identity of Person to Contact for More Information Regarding the Plan.........8

   C.    Disclaimer ...................................................................................................................8

II.    BACKGROUND..................................................................................................................9

      1.    Bankruptcy Proceedings.............................................................................11

      3.    Actual and Projected Recovery of Preferential or Fraudulent Transfers .........11

      4.    Procedures Implemented to Resolve Financial Problems ..............................11

      5.    Current and Historical Financial Conditions............................................12

III.    SUMMARY OF THE PLAN OF REORGANIZATION ....................................................12

   A.    What Creditors and Interest Holders Will Receive Under the Proposed Plan .....................12

   B.    Unclassified Claims ..................................................................................................12

      1.    Administrative Expenses and Fees.............................................................12

      2.    Priority Tax Claims ....................................................................................14

   C.    Classified Claims and Interests ................................................................................14

      1.    Classes of Secured Claims .........................................................................14

      2.    Classes of Priority Unsecured Claims........................................................17

      3.    Class of General Unsecured Claims...........................................................17

   D.    Means of Effectuating the Plan ................................................................................17

      1.    Funding for the Plan...................................................................................18

      2.    Post-confirmation Management..................................................................18

      3.    Disbursing Agent .......................................................................................18

   E.    Other Provisions of the Plan ....................................................................................18

   1.    Executory Contracts and Unexpired Leases..............................................18

F.    Tax Consequences of Plan .................................................................................... 19

G.    Risk Factors ............................................................................................................ 19

IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES ................................ 20

A.    Who May Vote or Object ........................................................................................ 21

1.    Who May Object to Confirmation of the Plan ............................................... 21

2.    Who May Vote to Accept/Reject the Plan ..................................................... 21

3.    Who Is Not Entitled to Vote ........................................................................... 22

4.    Who Can Vote in More Than One Class ........................................................ 23

5.    Votes Necessary to Confirm the Plan ............................................................ 23

6.    Votes Necessary for a Class to Accept the Plan ............................................ 23

7.    Treatment of Nonaccepting Classes ............................................................... 23

8.    Request for Confirmation Despite Nonacceptance by Impaired .................... 24

C.    Feasibility ............................................................................................................... 26

A.    Discharge ................................................................................................................ 28

B.    Revesting of Property in the Debtor ...................................................................... 29

C.    Modification of Plan ............................................................................................... 29

D.    Post-Confirmation Conversion/Dismissal ............................................................. 29

## I.    INTRODUCTION

James Walter Lucas and Barbara Jean Lucas are the Debtors in a voluntary Chapter 11 bankruptcy case. This is the debtors' fourth filing since 2012.  On February 10, 2012, James Walter Lucas  and Barbara Jean Lucas, commenced a bankruptcy case by filing a voluntary Chapter 11 petition, case No. 12-13360 (the "2012 Petition")  under the United States Bankruptcy Code ("Code"), 11 U.S.C. §101, et seq.

 Chapter 11 of the Code allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  The debtors' case under the 2012 Petition was later converted to a case under Chapter 7 of the Bankruptcy code and the Debtors received a discharge of their debts under 11 U.S.C. §727.  This discharge, while removing the debtors' *in personam* liability for all of their debts, including secured debts, left secured obligations against their various real properties.  The Debtors sought twice more to reorganize their *in rem* liabilities after reducing the amount of properties and engaging in outside loan modification.  The debtors filed two more petitions under Chapter 13, cases No. 14-32750 and 16-18507.  Both of those cases were dismissed.  Finally and most recently the debtors filed the within case, No. 16-32587 under Chapter 13, and, when it was calculated that the Debtors' secured obligations exceeded the limits permissible pursuant to 11 U.S.C §109(e), the Debtors' moved to convert the case to one under Chapter 11 of the Bankruptcy Code.

James Walter Lucas and Barbara Jean Lucas are the parties proposing the Plan sent to you in the same envelope as this document.   THE DOCUMENT YOU ARE READING IS THE

DISCLOSURE STATEMENT FOR THE PLAN WHICH IS ANNEXED HERETO AS **EXHIBIT**

**A.** This is a reorganization plan. In other words, the Proponent seeks to accomplish payments under

the Plan by utilizing income from Debtor's rental properties and salary/commissions from current

employment.

**A.** **Purpose of This Document**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information

relating to the Plan and the process the Court follows in determining whether or not to confirm the

Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW
ABOUT:**

**(1)** **WHO CAN VOTE OR OBJECT,**

**(2)** **THE PROPOSED TREATMENT OF YOUR CLAIM (i.e., what your claim
will receive if the Plan is confirmed), AND HOW THIS TREATMENT
COMPARES TO WHAT YOU WOULD RECEIVE IN LIQUIDATION,**

**(3)** **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING
THE BANKRUPTCY,**

**(4)** **WHAT THE COURT WILL CONSIDER WHEN DECIDING
WHETHER TO CONFIRM THE PLAN,**

**(5)** **THE EFFECT OF CONFIRMATION, AND**

**(6)** **THE FEASIBILITY OF THE PLAN.**

This Disclosure Statement cannot tell you everything about your rights. You should

consider consulting your own lawyer to obtain more specific advice on how this Plan will affect

you and what is the best course of action for you.

5

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

Code Section 1125 requires a Disclosure Statement to contain "adequate information" concerning the Plan. The term "adequate information" is defined in Code Section 1125(a) as "information of a kind, and in sufficient detail," about a debtor and its operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of the debtor to make an informed judgment about accepting or rejecting the Plan. The Bankruptcy Court ("Court") has determined that the information contained in this Disclosure Statement is adequate, and it has approved this document in accordance with Code Section 1124.

This Disclosure Statement is provided to each creditor whose claim has been scheduled by the Debtor or who has filed a proof of claim against the Debtor and to each interest holder of record as of the date of approval of this Disclosure Statement. Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

**B.    Confirmation Procedures**

**1.    Persons Potentially Eligible to Vote on the Plan**

In determining acceptance of the Plan, votes will only be counted if submitted by a creditor whose claim is duly scheduled by the Debtor as undisputed, non-contingent and unliquidated, or who, prior to the hearing on confirmation of the Plan, has filed with the Court a proof of claim which has not been disallowed or suspended prior to computation of the votes on the Plan.

All shareholders of record as of the date of approval of this Disclosure Statement may vote on the Plan. The Ballot Form that you received does not constitute a proof of claim. If you are

uncertain whether your claim has been correctly scheduled, you should check the Debtor's

Schedules, which are on file at the office of the Clerk of the Bankruptcy Court located at: United

States Bankruptcy Court, Martin Luther King Jr., Federal Building & Courthouse, 50 Walnut

Street, P.O. Box 1352, Newark, NJ 07102-1352. The Clerk of the Bankruptcy Court will not

provide this information by telephone.

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS

DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT

YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN,

THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND

INTEREST HOLDERS IN THIS CASE.

**2.  Time and Place of the Confirmation Hearing**

The hearing at which the Court will determine whether to confirm the Plan will take place

on _____, at ____A.M./P.M., in Courtroom ___, United States Bankruptcy Court,

Martin Luther King Jr., Federal Building & Courthouse, 50 Walnut Street, P.O. Box 1352, Newark,

NJ 07102-1352.

**3.  Deadline For Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and

return the ballot in the enclosed envelope to Scott J. Goldstein of Law Offices of Scott J. Goldstein,

LLC, 280 West Main Street, Denville, NJ 07834.

Your ballot must be received by _____or it will not be counted.

7

**4.**    **Deadline For Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon,

Scott J. Goldstein, at Law Offices of Scott J. Goldstein, LLC, 280 West Main Street, Denville, NJ

07834, 973-453-2838 by July 31,2018.

**5.    Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact the

Proponent's Counsel:  Scott J. Goldstein of Law Offices of Scott J. Goldstein, LLC at 280 West

Main Street, Denville, NJ 07834, 973-453-2838.

**C.**    **<u>Disclaimer</u>**

The financial data relied upon in formulating the Plan is based on the Debtor's records.

The information contained in this Disclosure Statement is provided by the Debtors.    The Plan

Proponent represents that everything stated in the Disclosure Statement is true to the Proponent's

best knowledge, information and belief.

**PLEASE NOTE THAT THE APPROVAL OF THIS DISCLOSURE STATEMENT BY
THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS,
FEASIBILITY OR DESIRABILITY OF THE PLAN.**

## II.    BACKGROUND

### A. DESCRIPTION AND HISTORY OF THE DEBTORS AND THEIR BUSINESSES AND PROPERTIES

The Debtors are James Walter Lucas and Barbara Jean Lucas, a married couple filing as individuals. Mr. and Mrs. Lucas's primary residence is 884 Sanford Avenue, Irvington, NJ 07111; the mortgage is $2522.00 a month and the lender is Ditech Financial, LLC. Mr. Lucas owned a fuel oil company called Buddy and Sons Fuel Co., Inc. and Mrs. Lucas is the owner of World Wide Realty, LLC.  Mr. Lucas now owns and operates an entity called World Wide Construction, LLC. The World Wide Realty office is located at 889 Sanford Avenue, Irvington, NJ 07111 and the property is owned by the Lucas's. The mortgage on this property is $1996.00 and the lender is Bayview Financial, Inc..

The Lucas's own several income-producing properties. The properties are all rental properties and all are subject to outstanding mortgages. The addresses and mortgage payments of the properties are as follows:

1. 280-282 Clinton Place, Newark, NJ 07112. Mortgage payment is $1612.64 a month. The lender is Shellpoint Mortgage..

2. 290-292 Lyons Avenue, Newark, NJ 07112. There is no mortgage on this property. The City of Newark holds a secured claim of $130,986.92 for unpaid real estate taxes.

3. 298-300 Clinton Place, Newark, NJ 07112. Mortgage payment is $2418.00 a month. The lender is Ocwen Loan Servicing.

**B.** **EVENTS LEADING TO CHAPTER 11 FILING**

In prior years, the Debtors had successfully conducted their separate businesses and were able to invest in properties.  They used the properties as sources of revenue and equity as they purchased other properties.

Over time, as the economy declined, Mr. Lucas's oil company became unprofitable. Business continued to deteriorate resulting in the sale of Buddy and Sons Fuel Co. Inc. in October 2010. Mrs. Lucas's business also suffered from the economic downturn. The real estate market collapsed resulting in a significant decrease in income as sales and their resultant commissions decreased. The secured loan obligations stayed the same or increased due to tax increases and maintenance as their income continued to fall making it impossible to fulfill their financial obligations.

The Debtors seek to restructure their secured obligations by reducing, as permitted, their secured obligations to market value and resolving the priority claims asserted by various taxing entities. They further seek to provide dividends to their unsecured creditors. Currently, their unsecured priority claims total $7,243.80 payable to the Internal Revenue Service . The Debtors also have outstanding unsecured non-priority claims totaling $3,499.00 due to various types of creditors such as credit card companies, small business loans, and utilities.

_____

**C.** SIGNIFICANT EVENTS DURING THE BANKRUPTCY

### 1.    Bankruptcy Proceedings

The following is a chronological list of significant events which have occurred during this case:

On November 28, 2016(the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey.

On April 13, 2017, the Debtors filed a motion to convert the case to Chapter 11, which was granted by the Court on June 9, 2017.

On June 23, 2017, the Debtor submitted an application to retain Law Offices of Scott J. Goldstein, LLC as counsel. On July 10, 2017 the Court approved the retention of Scott J. Goldstein

**Other Legal Proceedings**

The Debtor is not currently involved in any non-bankruptcy legal proceedings.

### 2.    Actual and Projected Recovery of Preferential or Fraudulent Transfers

The Debtor does not estimate any recoveries to be realized from the recovery of fraudulent and preferential transfers.

### 3.    Procedures Implemented to Resolve Financial Problems

In an effort to remedy the problems that led to the bankruptcy filing, Debtor has implemented the following procedures:

1.  Enforcing payment of rent,

2.  Marketing properties to fill space,

3.  Seeking more reliable tenants.

11

### 4. Current and Historical Financial Conditions.

The Debtors have attached their monthly operating report herein.

## III. SUMMARY OF THE PLAN OF REORGANIZATION

### A. What Creditors and Interest Holders Will Receive Under the Proposed Plan

The Plan classifies claims and interests in various classes. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

### B. Unclassified Claims

Certain types of claims are not placed into voting classes. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has <u>not</u> placed the following claims in a class:

### 1. Administrative Expenses and Fees

Administrative expenses are claims for fees, costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code Section 507(a)(1), including all professional compensation requests pursuant to Sections 330 and 331 of the Code. The Code requires that all administrative expenses including fees payable to the Bankruptcy Court and the Office of the United States Trustee which were incurred during the pendency of the case must be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's unpaid administrative fees and expenses ("Compensation"), an estimate of future professional fees and other administrative claims and fees

12

and their treatment under the Plan:

| NAM | AMOUNT ESTIMATED | TREATMENT | TYPE OF CLAIM |
|---|---|---|---|
| Law Offices of Scott J. Goldstein, LLC | $10,000.00 | Payments to be made from plan | Administrative |
| Clerk's Office Fees | 0.00 | Paid in full on Effective Date | Administrative |
| Office of U.S. Trustee Fees | 375.00 | Paid in full on effective date | Administrative |
| TOTAL: | | | |
| | TOTAL | | $10,375.00 |

## **Court Approval of Professional Compensation Required:**

Pursuant to the Bankruptcy Code, the Court must rule on all professional compensation and expenses listed in this chart before the compensation and expenses will be owed. The professional in question must file and serve a properly noticed fee application for compensation and reimbursement of expenses and the Court must rule on the application.   Only the amount of compensation and reimbursement of expenses allowed by the Court will be owed and required to be paid under this Plan as an administrative claim.

Each professional person who asserts a further administrative claim that accrues before the confirmation date shall file with the Bankruptcy Court, and serve on all parties required to receive notice, an application for compensation and reimbursement of expenses no later than thirty (30) days after the Effective Date of the Plan.  Failure to file such an application timely shall result in the professional person's claim being forever barred and discharged.  Each and every other person asserting an administrative claim shall be entitled to file a motion for allowance of the asserted administrative claim within ninety days of the Effective Date of the Plan, or such administrative claim shall be deemed forever barred and discharged.  No motion or application is required to fix the

fees payable to the Clerk's Office or Office of the United States Trustee.  Such fees are

determined by statute.

As indicated above, the Debtor will need to pay approximately __$11,000__worth of

administrative claims and fees on the Effective Date of the Plan unless a claimant has agreed to be

paid later or the Court has not yet ruled on the claim.

**2.      Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by

Code Section 507(a)(8). The Code requires that each holder of such a Section 507(a)(8) priority tax

claim receive the present value of such claim in deferred cash payments, over a period not exceeding

six years from the date of the assessment of such tax.

**C.      Classified Claims and Interests**

**1.      Classes of Secured Claims**

Secured claims are claims secured by liens on property of the estate.  The following chart

lists all classes of creditors containing the holders of the Debtor's secured pre-petition claims and

their treatment under this Plan

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|----------------|-----------|
| 1 | Ditech Financial, LLC Acct # ending: 8859 Property address: 884 Sanford Avenue Irvington, NJ 07111 | N | N | • Payment as per current requirements will continue. |

| 2 | Bayview Loan Servicing, LLC Acct # ending: 9351 889 Sanford Avenue Irvington, NJ 07111 | N | Y | <ul><li>Pymt Interval = every 30 days</li><li>Pymt Amt/interval =$1934.83 as adjusted periodically for escrows.</li><li>Begin Date= Effective date</li><li>End Date=360 payments from Effective Date</li><li>Interest Rate= 5%</li><li>Total % Payout =45%</li><li>Treatment of Lien= Bifurcated</li><li>There is no unsecured payment as the *in personam liability* was discharged in case no. 12-13360</li></ul> |
| 2 | Ocwen Loan Servicing Acct # ending: 0801 298-300 Clinton Place Newark, NJ 07115 | N | Y | <ul><li>Pymt Interval = every 30 days</li><li>Pymt Amt/interval =1466.64 as adjusted periodically for escrows.</li><li>Begin Date= Effective date</li><li>End Date=360 payments from Effective Date</li><li>Interest Rate= 5%</li><li>Total % Payout =33</li><li>Treatment of Lien= Bifurcated</li><li>There is no unsecured payment as the *in personam liability* was discharged in case no. 12-13360</li></ul> |

**REMAINDER OF PAGE INTENTIONALLY BLANK**

| | | | | |
|---|---|---|---|---|
| 2 | Shellpoint Mortgage Acct # ending: 6231 280-282 Clinton Place Irvington, NJ 07112 | N | Y | • Pymt Interval = every 30 days<br>• Pymt Amt/interval =2103.26 as adjusted periodically for escrows.<br>• Begin Date= Effective date<br>• End Date=360 payments from Effective Date<br>• Interest Rate= 5%<br>• Total % Payout =40<br>• Treatment of Lien= Bifurcated<br>• Payment of arrears at $666.13 per month for 60 months.<br>• There is no unsecured payment as the *in personam liability* was discharged in case no. 12-13360 |
| 3 | Ocwen Loan Servicing Acct # ending: 5887 376 Avon Avenue Newark, NJ 07108 | N | Y | • Surrendered in full and final satisfaction |
| 4. | City of Newark 290 Lyons Avenue, Newark, NJ. | N | N | • Payments of $2200 per month over 60 months |

### 2.      Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes.  Certain types of claims including taxes are entitled to priority treatment.  The Debtors intend to exercise their rights under 11 U.S.C. §1128 to obtain the maximum period available to satisfy any allowed tax claim.  The Debtor reserves the right to file an action under 11 U.S.C. §505 to determine the extent of any priority tax claims.

### 3.      Class of General Unsecured Claims

General unsecured claims are uncollateralized claims not entitled to priority under Code Section 507(a).  The following chart identifies this Plan's treatment of the class containing all of Debtor's general unsecured claims:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | Citibank, NA<br>Talmadge Village, LLC<br>Credit One Bank, N.A. | N | • These claimants will receive their pro-rata share of monthly payments of $100 beginning on the effective date, payable for 35 months.  Total is $3499.87 |

### D.      Means of Effectuating the Plan

### 1.    Funding for the Plan

The Plan will be funded by the Debtor's cash on hand at the Effective Date and income received thereafter.

### 2.    Post-confirmation Management.

The Debtors will continue to manage properties and affairs.

### 3.    Disbursing Agent

No disbursing agent has been selected.  The debtors shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan.  The Disbursing Agent shall be compensated as set forth in the Plan.

### E.    Other Provisions of the Plan

### 1.    Executory Contracts and Unexpired Leases

The Plan provides that all Executory Contracts and Unexpired Leases, except for those specifically assumed by the Debtor in writing or previously assumed by Court Order, shall be deemed rejected. All proofs of claim with respect to claims arising from said rejection must be filed with the Bankruptcy Court within the earlier of (i) the date set forth for filing claims in any order of the Bankruptcy Court approving such rejection or (ii) thirty (30) days after the Confirmation Date. Any such claims, proofs of which are not filed timely, will be barred forever from assertion.

### 2.    Changes in Rates Subject to Regulatory Commission Approval

This Debtor is not subject to governmental regulatory commission approval of its rates.

### 3.    Retention of Jurisdiction

The Court will retain jurisdiction of this case pursuant to the provision of Chapter 11 of the

Code, pending the final allowances or disallowances of all Claims affected by the Plan.

**4.      Procedures for Resolving Contested Claims**

The Debtor and/or the Disbursing Agent shall have 60 days subsequent to confirmation to object to the allowance of claims. The Proponent has reviewed the claims that have been filed. The Proponent intends to object or cause the Disbursing Agent to object to the following number and amounts of claims in each class.

**5.      Effective Date**

**The Plan will become effective on the Effective Date which is thirty (30) days after the date on which the order of confirmation becomes final.**

**6.      Modification**

The Plan Proponent may alter, amend or modify the Plan at any time prior to the Confirmation Date and thereafter as provided in Section 1127(b) of the Bankruptcy Code.

**F.      Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.  The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues this Plan may present to the Debtor. The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

**G.      Risk Factors**

The following discussion is intended to be a non-exclusive summary of certain risks attendant upon the consummation of the Plan. You are encouraged to supplement this summary with your own analysis and evaluation of the Plan and Disclosure Statement, in their entirety, and in consultation with your own advisors. Based on the analysis of the risks summarized below, the Plan Proponent believes that the Plan is viable and will meet all requirements of confirmation:

As with any income stream derived by rental payments by tenants, there is a risk that tenants will be late in paying monthly rent which may, in turn, cause a hardship in paying proposed Plan payments. The Debtors will anticipate this risk to the best of their ability by collecting security deposits in advance and seeking more reliable tenants, thereby ensuring that all rents are paid on time.

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.    The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.  The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.    Some of the requirements include that the Plan must be proposed in good faith, that creditors or interest holders have accepted the Plan, that the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and that the Plan is feasible.  These requirements are not the only

20

requirements for confirmation.

### A. **Who May Vote or Object**

#### 1. **Who May Object to Confirmation of the Plan**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

#### 2. **Who May Vote to Accept/Reject the Plan**

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim that is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

##### a. *What Is an Allowed Claim/Interest*

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS June 12, 2012.

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in

interest has objected to the interest.

### b. What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is

impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual

rights of the members of that class. For example, a class comprised of general unsecured claims is

impaired if the Plan fails to pay the members of that class 100% of their claim plus interest.

In this case, the Proponent believes that classes ___2, and 3_____are impaired and that

holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

The Proponent believes that classes _____1 and 4 and 5_____ are unimpaired and that

holders of claims in each of these classes therefore do not have the right to vote to accept or reject

the Plan.   Parties who dispute the Proponent's characterization of their claim or interest as being

impaired or unimpaired may file an objection to the Plan contending that the Proponent has

incorrectly characterized the class.

### 3.      Who Is Not Entitled to Vote

The following four types of claims are not entitled to vote:  (1) claims that have been

disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code Section

507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under

the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to

have accepted the Plan. Claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and

(a)(7) are not entitled to vote because such claims are not placed in classes and they are required to

receive certain treatment specified by the Code. Claims in classes that do not receive or retain any

value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

**4.      Who Can Vote in More Than One Class**

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

**5.      Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section (IV.A.8.).

**6.      Votes Necessary for a Class to Accept the Plan**

A class of claims is considered to have accepted the Plan when more than one-half ($\frac{1}{2}$) in number and at least two-thirds ($\frac{2}{3}$) in dollar amount of the allowed claims that actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds ($\frac{2}{3}$) in amount of the allowed interest-holders of such class which actually voted, voted to accept the Plan.

**7.      Treatment of Nonaccepting Classes**

As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the

Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown". The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of Section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. §1129(b) and applicable case law.

**8.     Request for Confirmation Despite Nonacceptance by Impaired**

**Class(es)**

The party proposing this Plan asks the Court to confirm this Plan by cramdown on impaired classes if any of these classes do not vote to accept the Plan.

**B.     <u>Liquidation Analysis</u>**

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

In order for the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation.   The Plan Proponent maintains that this requirement is met here for the following reasons:

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation:

**ASSETS**

| | | |
|---|---|---|
| Real Property: 884 Sanford Avenue, Irvington, NJ 07111 | | $ 87,500.00 |
| Minus:  1st Mortgage | $ 206,608.61 | |
| Costs of Sale | $ 8,600.00 | |
| Net Equity: | | $ (184,951.00) |

| | | |
|---|---|---|
| Real Property:  889 Sanford Avenue, Irvington, NJ 07111 | | $ 81,000.00 |
| Minus:  1st Mortgage | $ 180,066.78 | |
| 2nd Mortgage | N/A | |
| Costs of Sale | $ 8,600.00 | |
| Net Equity: | | $ (102,666.78) |

| | | |
|---|---|---|
| Real Property: 298-300 Clinton Place, Newark, NJ 07115 | | $ 58,000.00 |
| Minus:  1st Mortgage | $ 194,800.52 | |
| Costs of Sale | $ 5,800.00 | |

| | | |
|---|---|---|
| Net Equity: | | $ (142,600.52) |
| | | |
| Real Property: 280-282 Clinton Place, Irvington, NJ 07112 | | $ 93,000.00 |
| Minus:  1st Mortgage | $ 209,637.76 | |
| Costs of Sale | $ 9,300.00 | |
| Net Equity: | | $ (175,937.76) |
| | | |
| Real Property: 376 Avon Avenue, Newark, NJ 07108 | | $ 93,000.00 |
| Minus:  1st Mortgage | $ 185,577.65 | |
| 2nd Mortgage | N/A | |
| Costs of Sale | $ 9,300.00 | |
| Net Equity: | | $ (101,877.65) |
| | | |
| Real Property:  290 Lyons Avenue, Newark, NJ | | $0.00 (environmental Contamination |
| Minus tax liens | | $130,986.92 |
| Net Equity | | $(130,986.92) |
| Total Net Equity: | | $ (654,069.63) |
| | | |

## C.    <u>Feasibility</u>

Another requirement for confirmation involves the feasibility of the Plan, which means that

confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial

reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such date. The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

Cash Debtor will have on hand by Effective Date      $ Appx 3,000 (not inclusive of cash collateral

**To Pay:** Administrative claims                                  -    1000

**To Pay:** Statutory costs & charges                            -    0

**To Pay:** Other Plan Payments due on Effective Date      -    600

Balance after paying these amounts . . . . . . . $_____1400

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

$            $2500.00        Cash in DIP Account now

+            4000      Additional cash DIP will accumulate from
                              net earnings between now and Effective Date

+            0.      Borrowing

+            0      Capital Contributions

+            0.00      Other

$            4500 Total

Borrowing is not contemplated at this time.

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.

The Proponent believes that this second aspect of the feasibility requirement is met for the

27

following reasons:

In summary, the Plan proposes to pay __$2800_____ each month, exclusive of mortgage

obligations.  As Debtor's financial projections demonstrate, Debtor will have an average cash flow,

after paying operating expenses (inclusive of mortgages) and post-confirmation taxes, of $3787.20

per month___ for the life of the Plan. The final Plan payment is expected to be paid on _the  60th

payment following the confirmation of the Plan.  The Plan Proponent contends that Debtor's

financial projections are feasible in light of the financial records maintained by the Debtor prior to

and during the pendency of the bankruptcy case. As shown by Debtor's historical financial

statements, Debtor's average cashflow, after paying operating expenses and post-confirmation

taxes, in the three years preceding the filing of this bankruptcy case is_ $10,000.00

monthly_____. Debtor's average cash flow, after paying operating expenses and post-

confirmation taxes, during the bankruptcy case is  _9,000 monthly_____.  Furthermore, as

discussed earlier in the Disclosure Statement at Section (II.E.4), Debtor has implemented

procedures to  _increase cash flow and retain qualified tenants_____.

     Accordingly, the Plan Proponent believes, on the basis of the foregoing, that the Plan is

feasible.

## V.      EFFECT OF CONFIRMATION OF PLAN

### A.      Discharge

     The Plan provides that upon confirmation of the Plan, the Debtor shall be discharged of

liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11

U.S.C. §1141.  However, any liability imposed by the Plan will not be discharged. If Confirmation

of the Plan does not occur or if, after Confirmation occurs, the Debtor elects to terminate the Plan,

the Plan shall be deemed null and void. In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims against the Debtor or its estate or any other persons, or to prejudice in any manner the rights of the Debtor or its estate or any person in any further proceeding involving the Debtor or its estate.   The provisions of the Plan shall be binding upon Debtor, all Creditors and all Equity Interest Holders, regardless of whether such Claims or Equity Interest holders are impaired or whether such parties accept the Plan, upon Confirmation thereof.

**B.     Revesting of Property in the Debtor**

Except as provided in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

**C.     Modification of Plan**

The Proponent may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan if Proponent modifies the plan before confirmation.

The Proponent may also seek to modify the Plan at any time after confirmation so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing. Proponent further reserves the right to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

**D.     Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under Section

1112(b), after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under Section 1112(b).  If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

Quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.

Date:  May 8, 2018____

/s/ James Lucas_____
**James Lucas**

/s/ Barbara Lucas_____
**Barbara Lucas**

**LAW OFFICES OF
SCOTT J. GOLDSTEIN, LLC**
*Attorneys for Debtors in Possession*

By:____/s/Scott J. Goldstein_____